Thomas Marc Litton, Esq. (CA Bar # 119985)
**SANFORD WITTELS & HEISLER, LLP**
120 Montgomery Street, Suite 1600
San Francisco, CA 94104
Telephone:   (415) 421-4770
Facsimile:   (415) 421-4784

Steven L. Wittels, Esq. (NY Bar No. SLW-8110)
David W. Sanford , Esq. (D.C. Bar No. 457933)
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue., 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
swittels@nydclaw.com
dsanford@nydclaw.com
(Pending Pro Hac Vice Admission)

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **MILDRED J. CHAPMAN, ANGELA HOPKINS, JULIA M. MAHAFFEY and BETHANY RICHES on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**DELL INC., formerly known as Dell Computer Corporation,**<br><br>**Defendant.** | CV 08 4945<br><br>**Civil Action**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Case No.:**<br><br>*Jury Trial Requested* |

Plaintiffs **MILDRED  J.  CHAPMAN,  ANGELA  HOPKINS,  JULIA  M. MAHAFFEY, and BETHANY RICHES** (collectively "Plaintiffs," "Named Plaintiffs," or

"Class Representatives"), by their attorneys Sanford Wittels & Heisler, LLP, bring this action for themselves and on behalf of two Classes more specifically defined below: (1) a class of current and former female employees of Defendant **DELL INC..** ("Dell" or the "Company"); and (2) a class of current and former Dell employees over the age of 40.  Based upon knowledge as to themselves and their own acts, and otherwise upon information and belief, Plaintiffs allege as follows:

## I.   INTRODUCTION AND OVERVIEW OF THE CLASS-WIDE DISCRIMINATION AT DELL

### A.   Basic Class-wide Allegations

1.      This case arises out of Defendant Dell's systemic, company-wide discriminatory treatment of thousands of its female employees and employees over the age of 40.

2.      *As one of the senior Dell male executive Vice Presidents, Michael Summers, informed Human Resources Senior Manager, Plaintiff Bethany Riches, in a written mid-year review, it's no easy task* **"breaking into arguably one of the toughest old boy networks in Dell."**  Indeed.

3.      Dell's discriminatory practices against Plaintiffs and the Classes span the gamut of prohibited acts, and read like an employment discrimination primer on how a company should *not* treat its employees, including:

> **A.**    *Failing to Pay Women Salaries and Bonuses Equal to Men Who Perform Substantially Similar and/or Comparable Work Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels[1];*

---

[1] Dell professional employees are categorized into grade levels which ascend in hierarchy in the following order: C1s to C3s (Managers and Senior Analysts); D1s (Senior Managers) to D3s (Directors); E1s (Vice Presidents) to E2s (Officers and Executive Leadership Team).  These grade levels determine an employee's salary range, bonus range, and other benefits.  The Company has very few D2s, and none in the Department in which Plaintiffs worked.  The ordinary progression line for D1s is directly to D3.

B.   *Segregating Women into Lower Grade Level Positions with Less Pay and Promotion Opportunities than Men Who Perform Substantially Similar and/or Comparable Work Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels;*

C.   *Failing to Promote Women at an Equal Rate with Men Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels;*

D.   *Disproportionately Awarding Men a Larger Share of Incentive Compensation Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels;*

E.   *Disproportionately Terminating Women as Compared to Men in Recent Mass Layoffs Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels; and*

F.   *Disproportionately Terminating Dell Employees Over the Age of 40 in Recent Mass Layoffs Company-wide, including at the Senior Manager D1 and Manager/Senior Analyst C3 Grade Levels.*

**B.**   **Named Plaintiffs/Class Representatives**

4.   Plaintiff Mildred J. Chapman held a leadership position as a Senior Manager (D1) in Dell's Global Human Resources Department from November 2005 until April 3, 2008, when she was also selected for Dell's mass layoff. At the time of her termination, Ms. Chapman was 59 years of age.

5.   Plaintiff Angela Hopkins held a leadership position as a Senior Manager (D1) at Dell's Global Human Resources Department from January 2006 until April 3, 2008, when Dell announced mass layoffs across all departments and terminated Ms. Hopkins without warning.

6.     Plaintiff Julia M. Mahaffey held a leadership position as a Manager (C3) in Dell's Global Human Resources Department from 2000 until October 26, 2007.

7.     Plaintiff Bethany Riches held a leadership position as a Senior Manager (D1) in Dell's Human Resources Department from September 2003 until May 26, 2008.

8.     Dell has subjected each of the Plaintiffs to discrimination in pay, compensation, promotion, and termination alleged above:

- Plaintiffs Chapman, Hopkins, Mahaffey and Riches were paid less than similarly-situated male employees.

- Plaintiffs Chapman, Hopkins, Mahaffey and Riches were segregated based on their gender into lower grade level positions than similarly-situated male employees.

- Plaintiffs Chapman, Hopkins, Mahaffey and Riches were not promoted at an equal rate to similarly-situated male employees.

- Plaintiffs Chapman and Hopkins were terminated based on their gender.

- Plaintiff Chapman was terminated based on her age.

9.     Although Dell consistently recognized their leadership and accomplishments, Plaintiffs Chapman, Hopkins, Mahaffey and Riches hit the glass ceiling that so many Dell women face, and were subsequently cast aside by the Company – in part as retaliation for speaking out against the gender discrimination infecting Dell.

**C.     Dell's Overall Diversity Record**

10.     Although the Company and its founder and CEO, Michael Dell, publicly tout their commitment to diversity, the reality fails to live up to the rhetoric.   While simultaneously proclaiming that diversity is "an essential element of our corporate values," the old adage "*A picture paints a thousand words*" tells the real story.   The following photographic array from

Dells' website shows the current inner cadre of Dell's 14-man strong Executive Leadership Team:

(http://www.dell.com/content/topics/global.aspx/about_dell/company/leadership/executive_team?~ck=ln&c=us&l=en&lnki=0&s=corp)



**Michael S. Dell**
Chairman of the Board and Chief Executive Officer



Brad R. Anderson

Senior Vice President, Business Product Group



Paul D. Bell

Senior Vice President and President, Americas



Michael R. Cannon

President, Global Operations



Jeffrey W. Clarke

Senior Vice President, Business Product Group

 **Andrew Esparza**

Senior Vice President, Human Resources

**Stephen J. Felice**

Senior Vice President and President, Asia-Pacific/Japan

 **Ronald G. Garriques**

President, Global Consumer Group

 **Brian T. Gladden**

Senior Vice President, Chief Financial Officer

 **Mark Jarvis**

Chief Marketing Officer

 **David A. Marmonti**

Senior Vice President and President, Europe, Middle East and Africa

 **Timothy W. Mattox**

Vice President, Strategy

 **Stephen F. Schuckenbrock**

Senior Vice President and President, Global Services, and Chief Information Officer

 **Lawrence P. Tu**

Senior Vice President, General Counsel

11.     As evidenced by the previous photographs, there are NO WOMEN members of the all-male Dell Executive Leadership Team.  This dearth of women at the highest reaches of the Company sets the tone for women's poor representation in its upper-level professional and executive ranks, and helps explain the pay and promotion disparities women encounter at Dell. Upon information and belief, women are significantly underrepresented at the highest circles of

corporate leadership, and have made few inroads into the male-dominated Officer's "club" at Dell.

12.   Upon information and belief, women also continue to be substantially underrepresented at the E1 (Vice President) level.  Upon information and belief, approximately 80 percent of all Vice Presidents are male.

13.   Upon information and belief, women also continue to be substantially underrepresented at the D3 (Director) level, the level at which Plaintiffs Chapman, Hopkins, and Riches actually worked and should have been paid and promoted.  Upon information and belief, approximately 80 percent of all Directors are male.

14.   Upon information and belief, women also continue to be substantially underrepresented at the D1 (Senior Manager) level, the level at which Plaintiff Mahaffey actually worked and should have been paid and promoted.  Upon information and belief, approximately 80 percent of all Senior Managers are male.

**D.   The Instant Class Action/Collective Action Lawsuit**

15.   Plaintiffs Chapman, Hopkins, Mahaffey, and Riches bring this lawsuit on their own behalf and on behalf of: (i) a class of similarly-situated female employees company-wide, including female employees at the D1 and C3 grade levels, to remedy the gender discrimination they have witnessed and experienced during their exemplary tenures at Dell; and Plaintiff Chapman further brings this lawsuit on behalf of (ii) a class of similarly-situated employees over the age of 40 years old company-wide, including employees over 40 at the D1 and C3 grade levels, to remedy the age discrimination she witnessed and experienced at Dell.  This lawsuit is designed to achieve systemic injunctive relief to change Dell's discriminatory pay, promotion, and termination policies and practices.

16. With no viable alternative to achieve the top-to-bottom changes that are needed to address Dell's discriminatory practices, Plaintiffs Chapman, Hopkins, Mahaffey, and Riches now sue Defendant Dell for individual, class, and collective relief.

17. Defendant Dell carried out its discrimination at the direction of and/or with the assistance of the Company's Senior Management and/or Officers, including

- MICHAEL S. DELL, Founder, CEO and Chairman of the Board;

- BRIAN T. GLADDEN , Senior Vice President and Chief Financial Officer;

- LAWRENCE P. TU, Senior Vice President and General Counsel;

- ANDREW ESPARZA, Senior Vice President of Corporate Human Resources;  and

- DOMINICK DICOSIMO, Vice President of Global Human Resources Operations (which includes responsibility for compensation and benefits functions).

18. Each of these members of the Dell leadership team engineered, approved, ratified and/or assisted in the wrongful acts described in this Complaint, including the discriminatory treatment of Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the discriminatory termination of Plaintiffs Chapman and Hopkins, and discriminatory treatment and termination of other female employees and older employees at Dell.

## II. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1337; 28 U.S.C. § 1343(a)(4); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the Equal Pay Act, 29 U.S.C. §§ 206, *et seq.*; and supplemental jurisdiction (28 U.S.C. § 1367), to redress and enjoin employment practices of Defendant in violation of these federal statutes.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Dell is located in this District, and at all times relevant to this action has been doing substantial business in this District.   Plaintiff Hopkins also resides in this District.

## III.   PROCEDURAL HISTORY

21.     Class Representative Mildred J. Chapman timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 29, 2008. Ms. Chapman received her Notice of Right to Sue Letter from the EEOC on or about August 2, 2008, and is now timely filing suit within ninety (90) days of receipt of her Notice of Right to Sue Letter.

22.     Class Representative Angela Hopkins timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 21, 2008. Ms. Hopkins received her Notice of Right to Sue Letter from the EEOC on or about August 2, 2008, and is now timely filing suit within ninety (90) days of receipt of her Notice of Right to Sue Letter.

23.     The Class Representatives are relying on their own EEOC charges and/or those of other Class Representatives.

## IV.   THE PARTIES

### A.     Plaintiffs

24.     **Plaintiff Mildred J. Chapman** is a resident of Texas.  Plaintiff Chapman was employed as a Senior Manager in the Global Human Resources Department for **Defendant Dell** in Round Rock, Texas from November 2005 until April 2008, when Dell terminated her at the age of 59.

25.     **Plaintiff Angela Hopkins** is a resident of California.   Plaintiff Hopkins was employed as a Senior Manager in the Global Human Resources Department for **Defendant Dell** in Round Rock, Texas from January 2006 until her termination in April 2008.

26.     **Plaintiff Julia M. Mahaffey** is a resident of Indiana.   Plaintiff Mahaffey was employed as a Manager in the Global Human Resources Department for **Defendant Dell** in Round Rock, Texas from 2000 until October 2007.

27.     **Plaintiff Bethany Riches** is a resident of Texas.   Plaintiff Riches was employed as a Senior Manager in the Human Resources Department for **Defendant Dell** in Round Rock, Texas from September 2003 until May 2008.

**B.      Defendant**

28.     **Defendant Dell Inc.** is and has been a multi-national company incorporated in Delaware.   Dell is headquartered in Texas, with offices in Northern California, including Mountain View, California and Fremont, California.   At a leading global computer systems and services company, Dell generated over $57 billion in revenue in 2007, and ranks as Number 34 on the Fortune 500.

**V.     FACTUAL ALLEGATIONS**

**A.      PLAINTIFF MILDRED J. CHAPMAN**

        **1.      Ms. Chapman's Hiring by Dell in November 2005 – Because of Her Skills and Experience, Dell Executives Promise Ms. Chapman Future Job Security and Promotion.**

29.     In November 2005, Ms. Chapman joined the Dell Global Human Resources (HR) Department as a Senior Manager at the D1 level.

30.     In hiring Ms. Chapman, the Company sought to attain an experienced, proficient, and versatile HR professional who could fill numerous roles in compensation, benefits, and as an HR generalist.

31.     Dell and its Senior Human Resources executives, including Vice President of Global Human Resources Operations Dominic DiCosimo, induced Ms. Chapman to accept the position and to relocate her family to Austin, Texas by representing that her talents were needed at Dell Headquarters and that if she made the move, she would be promoted to the Director (D3) level within 12-18 months and would be protected from any future layoffs.

32.     In reliance on these promises, Ms. Chapman and her husband sold their home in Houston, Texas, relocated to Austin, and forfeited other lucrative job opportunities in Houston.

### 2.    Ms. Chapman is Lauded for Her Exemplary Job Performance and Given Increased Duties and Responsibilities.

33.     Throughout her employment, Ms. Chapman received numerous commendations from her managers at Dell who recognized in writing that she made "significant contributions to the business," and brought "great experience to the job and has the capability to do many different HR roles."  As a result of her efforts, her 2006 performance appraisal was a Valued High rating, bordering on an Exceptional, with a High rating for future potential.  Dell executives told Ms. Chapman that they wanted to ensure that she stayed with the Company and wished to "lock her in."

34.     At the time of her hiring, Ms. Chapman was responsible for overseeing compensation for approximately 7,000 employees in the Dell Americas Operations.  As a result of her success in this position and the recognition Dell gave her, Ms. Chapman was then asked to take on the additional responsibility of managing compensation and global benefits for well over 17,000 employees in nine countries.

3.   **Ms. Chapman is Subjected to Gender Discrimination in Salary and Incentive Compensation and, on the Basis of Gender and Age, is Denied the Promotion Promised and Due to Her.**

35.   Ms. Chapman was not awarded with a promotion or any increase in remuneration, although her level of responsibility now equaled or exceeded that of male Directors.  The individual who was previously responsible for Ms. Chapman's new duties was a male Director, titled and compensated at the D3 level.

36.   Despite Dell's promises that Ms. Chapman would be made Director, her outstanding performance reviews, and her increased level of responsibility, Dell management never elevated Ms. Chapman to D3 status in her two and a half years at the Company.  Although additional Director were available, they were instead awarded to less qualified and less experienced males under the age of 40.  Furthermore, during the April 2008 restructuring, Ms. Chapman was not considered for Director level HR positions for which she was highly qualified but which were instead granted to younger males.

37.   Upon information and belief, during her November 2005-April 2008 tenure, Dell significantly underpaid Ms. Chapman relative to her male counterparts at the D3 level.  As a further result of Dell's failure to provide her equal pay or promote her to Director (either by elevating her title to be commensurate with her duties, by elevating her pay to be commensurate with her duties, or by awarding her another open position) Ms. Chapman lost a substantial amount in incentive compensation, including promotion grants, Short (IBP) and Long Term Incentive (LTI) awards for 2006 through 2008 as compared to men with equivalent or lesser responsibilities and qualifications.

4.   **Ms. Chapman Complains to Management Regarding Discriminatory Treatment.**

38.     During Ms. Chapman's employment at Dell, she repeatedly complained about discrimination to her immediate manager as well as to Mr. DiCosimo.  In particular, Plaintiff Chapman maintained that she should be paid equally to males with similar levels of responsibility, and promoted to the Director (D3) title and compensation scale occupied by males with similar levels of responsibility.  Dell repeatedly told her she was "on the list" to be promotion to the Director (D3) level.

       **5.      During Dell's April 2008 Layoffs, Ms. Chapman is Subjected to Discriminatory Termination/Retaliation Which Also Constitutes a Breach of Dell's Promises of Future Job Security.**

39.     On April 3, 2008, Ms. Chapman was terminated in one of Dell's mass layoffs. Ms. Chapman's selection for the reduction in force was discriminatory based on gender and age and in retaliation for her previous complaints of discrimination.

40.     Dell's layoffs had a disproportionate effect on women and employees over 40. Upon information and belief, women were laid off at a statistically significant higher rate then men, while older employees over 40 were also laid off at a statistically significant higher rate than younger employees.   At age 59, Ms. Chapman was the oldest employee within her immediate workgroup to be laid off.

41.     While women and older employees such as Ms. Chapman were laid off, low performing and less qualified men and younger executives in equivalent positions were protected by their bosses, given safe havens within the Company, offered an opportunity to accept a demotion, or otherwise afforded preferential treatment.

42.     In an attempt to justify their termination decisions, senior Dell executives improperly manipulated and lowered the favorable performance ratings that Plaintiff Chapman and other women received for performance in 2007.  As a result of the manipulation of her 2007

performance appraisal, Dell failed to grant Ms. Chapman an LTI award for 2008 and granted her a substantially lower bonus; consequently, she lost a substantial amount in additional employment benefits. Further, the Company informed terminated female employees that there were no available positions; however, almost simultaneously with the announcement of the layoffs, Dell had available at least thirteen other open jobs in HR for which Ms. Chapman is very qualified based on her experience and performance. Those positions which Plaintiffs are aware have been filled were given to male employees and/or to younger employees.

43. Accordingly, Dell has discriminatorily denied Ms. Chapman the compensation and promotional opportunities due to her since her hiring in November 2005, the effect of which was compounded by each passing year and was significantly magnified by Dell's discriminatory and retaliatory termination of her employment in April 2008. Dell's discriminatory and retaliatory acts not only deprived Ms. Chapman of equal pay, promotional opportunities and just compensation during her time at Dell, but also continue to act as a black mark on Ms. Chapman's exceptional career, undeniably hindering her future opportunities for employment. At the same time, Ms. Chapman has suffered significant physical and emotional harm as a result of her treatment at Dell, impeding her personal life and general well-being.

**B.     PLAINTIFF ANGELA HOPKINS**

1. **Angela Hopkins' Hiring by Dell in January 2006 – Despite Being Qualified for Director (D3) Position, Ms. Hopkins is Hired into a Senior Manager (D1) Position with Promised Opportunity for Advancement.**

44. In January 2006, Ms. Hopkins joined Dell's Global Human Resources (HR) Department as a Senior Manager at the D1 level. In placing Ms. Hopkins, the Company's aim was to have Ms. Hopkins serve as an experienced HR professional, qualified and ready to

"back-fill" and replace the then-Manager, David Strauss, at the Director (D3) level, in the event that Strauss changed positions or left the company.

45.     From the outset of her employment, the Company acknowledged that Ms. Hopkins was qualified for a D3 level position.  Men comparably qualified with Ms. Hopkins were hired immediately into Director positions.

> ### 2.     Ms. Hopkins is Commended by Dell Management for her Outstanding Job Performance.

46.     Throughout her employment, Ms. Hopkins received numerous accolades from high ranking Executives at Dell for going above and beyond the normal expectations of her job, including successful integration of newly acquired companies and strategic implementation of policies to attract and retain superior employees.

47.     As a result of Ms. Hopkins' efforts, the Company concluded her 2006 performance review with the accolade that she "*exceeded individual goals through superior customer experience, team work, integration and effective leadership.*"  As a result of her outstanding performance, the Company increased her salary in 2007, following repeated commendations from her managers, although her salary remained well below her similarly-situated male counterparts .

> ### 3.     Ms. Hopkins is Subjected to Gender Discrimination in Salary and Incentive Compensation, and is Discriminatorily Denied a Scheduled Promotion.

48.     Despite her stellar performance, Ms. Hopkins was compensated less than her similarly-situated male counterparts.  Upon information and belief, during her January 2006-April 2008 tenure, Dell significantly underpaid Ms. Hopkins relative to her male peers at D1

status.  Ms. Hopkins was also paid at a lower market rate for her work while comparable male employees at Dell were routinely paid much higher on the market rate scale.

49.     In January 2007, Ms. Hopkins' Manager, David Strauss, left the Company, as Dell had anticipated when the Company hired Ms. Hopkins.  Ms. Hopkins was asked to assume the role of her departing Manager over the course of eight months while the Company conducted an external search for a permanent replacement.  In addition, Ms. Hopkins was also asked to fill in during this time period for a department colleague who went on a 3-month maternity leave. Despite its representations, and in defiance of Ms. Hopkins' exemplary performance and evaluations while serving multiple roles, Dell did not offer her the Director (D3) position. Instead, in October 2007, Dell hired a male from outside the Company with less experience and qualifications than Ms. Hopkins.

50.     Upon information and belief, during the course of 2007 through 2008, Dell significantly underpaid Ms. Hopkins relative to her male counterparts at the D3 level.  As a further result of Dell's failure to provide her equal pay or promote her to Director (either by elevating her title to be commensurate with her duties, by elevating her pay to be commensurate with her duties, or by awarding her another open position) Ms. Hopkins lost a substantial amount in incentive compensation, including Short (IBP) and Long Term Incentive (LTI) awards as compared to men with equivalent or lesser responsibilities and qualifications, as well as a substantial amount in promotion grants and retention awards.

### 4.     Ms. Hopkins Complains to Management Regarding Discriminatory Treatment.

51.     Before her wrongful termination, Plaintiff Hopkins repeatedly complained to the Company about gender discrimination against herself and other similarly situated women in pay, compensation, promotion, and other terms and conditions of employment.

**5.    Ms. Hopkins is Subjected to Discriminatory Termination/ Retaliation During Dell's April 2008 Layoffs.**

52.     In 2008, Dell planned a mass company-wide reduction in force scheduled to take effect in April 2008.  Two weeks before these layoffs, Ms. Hopkins' Manager,  Paul Gregory, informed her that due to her exceptional record – including her rating as a "Valued Performer" – she would be retained at the Company.  Despite such representations, Ms. Hopkins was terminated without warning on April 3, 2008.

53.     Ms. Hopkins' selection for Dell's mass layoff was both discriminatory based on gender and retaliatory for her complaints of previous gender discrimination.

54.     While women such as Ms. Hopkins were laid off, low performing and less qualified male executives in equivalent positions were protected based on their gender.  Men with less qualifications than Ms. Hopkins and her terminated female peers were frequently given safe havens within the Company or otherwise afforded preferential treatment.

55.     In an attempt to justify their termination decisions, senior Dell executives improperly manipulated and lowered the favorable performance ratings that Plaintiff Hopkins and other women received for performance in 2007.  As a result of the manipulation of her 2007 performance review, Dell reduced Ms. Hopkins' bonus and also failed to grant her an LTI award for 2008, estimated to have been worth several hundred thousand dollars.  Further, the Company informed terminated female employees that there were no available positions; however, almost simultaneously with the announcement of the mass layoffs, Dell had available at least thirteen other open jobs in the HR department for which Plaintiff Hopkins is very qualified based on her experience and performance.  Those positions which Plaintiffs are aware have been filled were given to male employees.

56.     Accordingly, Dell has discriminatorily denied Ms. Hopkins the compensation and promotional opportunities due to her since her hiring in January 2006, the effect of which was compounded by each passing year and was significantly magnified by Dell's discriminatory and retaliatory termination of her employment in April 2008.  Dell's discriminatory and retaliatory acts not only deprived Ms. Hopkins of equal pay, promotional opportunities and just compensation during her time at Dell, but also continue to act as a black mark on Ms. Hopkins' exceptional career, undeniably hindering her future opportunities for employment.  At the same time, Ms. Hopkins has suffered significant physical and emotional harm as a result of her treatment at Dell, impeding her personal life and general well-being.

**C.     PLAINTIFF JULIA M. MAHAFFEY**

**1.     Julia Mahaffey Is Hired by Dell in 2000 – Despite Being Qualified for a Senior Manager (D1) Position, Ms. Mahaffey is Hired into a Manager (C3) Position with Promised Opportunity for Advancement.**

57.     In or around 2000, Ms. Mahaffey joined Dell as a Human Resources (HR) Senior Consultant/Manager at the C3 level.  At the time of her hiring, Ms. Mahaffey held two professional degrees – a *Juris Doctor* degree and a *Masters of Business Administration* degree.  From the outset of her employment, Dell acknowledged that Ms. Mahaffey was qualified for a higher level position at the Senior Manager (D1) level.  Men comparably qualified with Ms. Mahaffey were hired immediately into Senior Manager (D1) positions.

**2.     Ms. Mahaffey is Lauded for Her Exemplary Job Performance and Given Increased Duties and Responsibilities.**

58.     Throughout her employment, Ms. Mahaffey received numerous commendations from her managers at Dell.  Dell designated Ms. Mahaffey in her 2007 performance review as "Key Talent," the highest rating for future potential at the Company.  They also recognized Ms.

Mahaffey "for her leadership which had resulted in Dell winning the Alexander Hamilton Award by Treasury & Risk Management Magazine" in her 2006 performance review.

59.     As a result of her strong performance, Dell continued to increase the responsibilities of Ms. Mahaffey.  In her 2006 review, Dell noted that Ms. Mahaffey took "*on more project work in the first 6 months of this year than she has done previously.*"  In addition to her full-time job as a HR Benefits Manager, Dell had Ms. Mahaffey co-lead a global compensation and benefits market gap analysis project, organize a global compensation and benefits forum, and provide leadership to the global compensation and benefits organization.  Only higher level employees - at the D1 level or higher - were responsible for similar duties.

60.     In or about March 2006, Ms. Mahaffey assumed even greater responsibilities in her new role as the International Compensation and Benefits Manager for Dell.  In this role, Ms. Mahaffey performed duties substantially equal to male employees at the D1 level.

61.     Given her increased responsibilities, Ms. Mahaffey repeatedly requested Dell increase her pay to the level of her similarly-situated male counterparts and promote her to the Senior Manager (D1) level.  Dell, however, refused to pay or promote her at the D1 level.

        **3.**      **Ms. Mahaffey is Subjected to Gender Discrimination in Salary and Incentive Compensation, and is Continuously Denied the Promotion Promised and Due to Her.**

62.     Although Ms. Mahaffey's level of responsibility now equaled or exceeded that of male Senior Managers (D1), Dell refused to award her a promotion or any increase in compensation comparable to her job responsibilities.  From March 2005 until the date of her resignation, Ms. Mahaffey performed duties substantially equal and/or comparable to male Senior Managers, titled and compensated at the D1 level.

63.     During this same time-period, Ms. Mahaffey continuously requested to be

paid equally to a Senior Manager (D1) or promoted to Senior Manager (D1). Although Dell promised that Ms. Mahaffey would be made a Senior Manager and continued to award her outstanding performance reviews and to increase her levels of responsibility, Dell management never elevated Ms. Mahaffey to D1 status in her seven years at the Company. Dell instead awarded pay increases and promotions to less qualified and less experienced males throughout this time.

### 4. Ms. Mahaffey Complains to Management Regarding Discriminatory Treatment.

64. Ms. Mahaffey repeatedly complained to the Company about gender discrimination against herself and other similarly situated women in pay, compensation, promotion, and other terms and conditions of employment.

### 5. Ms. Mahaffey is Subjected to Retaliation by Dell.

65. After complaining about the gender discrimination at Dell, the Company retaliated against Ms. Mahaffey. Shortly after her complaints were made about gender discrimination, Ms. Mahaffey learned that her promotion was never going to happen at Dell. This led Ms. Mahaffey to resign from the Company.

67. Accordingly, Dell has discriminatorily denied Ms. Mahaffey the compensation and promotional opportunities due to her since her hiring in 2000, the effect of which was compounded by each passing year and was significantly magnified by Dell's discriminatory and retaliatory treatment of her which led to her resignation in October 2007. Dell's discriminatory and retaliatory acts deprived Ms. Mahaffey of equal pay, promotional opportunities and just compensation during her time at Dell. At the same time, Ms. Mahaffey has suffered emotional harm as a result of her treatment at Dell, impeding her personal life and general well-being.

**D.     PLAINTIFF BETHANY RICHES**

      1.     **Bethany Riches' Hiring by Dell in September 2003 – Despite Being Qualified for Director (D3) Position, Ms. Riches is Hired into a Senior Manager (D1) Position with Promised Opportunity for Advancement.**

     68.     In September 2003, Ms. Riches joined Dell as a Human Resources (HR) Senior Manager at the D1 level.  Ms. Riches previously held a Director level position at another multi-national company.  From the outset of her employment, Dell acknowledged that Ms. Riches was qualified for a Director (D3) level position.  Men comparably qualified with Ms. Riches were hired immediately into Director (D3) positions.

      2.     **Ms. Riches is Lauded for Her Exemplary Job Performance and Given Increased Duties and Responsibilities.**

     69.     Throughout her employment, Ms. Riches received numerous commendations from her managers at Dell who recognized her *"outstanding service level," "excellent coaching and feedback"* to clients, and excellent *"execute[ion] ... on the core HR programs..."* in her performance reviews.  As a result of her efforts, Dell gave Ms. Riches an Exceptional rating, the highest rating for future potential, in her 2006 performance review.. Dell executives also stated in her review that *"Beth will have a great opportunity for increased exposure, influence across the Americas and growth in the upcoming year..."*.

     70.     In August 2006, Ms. Riches assumed a new, larger role as HR Leader for Dell Public Sales Organization (PSO).  In this role, she replaced a male HR Director (D3), and assumed his responsibilities for overseeing approximately 1,000 employees in the PSO business.  In addition to assuming her new responsibilities, she also continued with her previous responsibilities of overseeing 850 employees in Dell Advanced Systems Organization (ASO).  Although Ms. Riches was now performing in a role even larger than her male predecessor Director's role, Dell refused to promote her to the D3 level.

71.     In February 2007, Ms. Riches assumed an even larger role as HR Leader for Dell Medium Business Organization (MBO).  In this role, she replaced another male HR Director (D3), and assumed his responsibilities for overseeing approximately 1,500 employees in the MBO business. At the same time, the male Director moved into Ms. Riches old role as HR Leader for Dell Public Sales Organization (PSO).  But unlike Ms. Riches, the male Director filled that role at the Director (D3) level.

72.     In the summer of 2007, Ms. Riches again assumed an even larger role as HR Leader for Dell Small and Medium Business Organization (SMBO).  In this role, she replaced another male HR Director (D3), and assumed his responsibilities for overseeing approximately 5,000 employees in the businesses. Like her male predecessor, she had six (6) direct reports and a total HR team of twenty (20) employees.  She was also responsible for overseeing employees at both the Nashville and Oklahoma facilities.  Despite her increased responsibilities and her repeated requests for equal pay and a promotion, Dell again refused to pay or promote Ms. Riches at the D3 level.

### 3.     Ms. Riches is Subjected to Gender Discrimination in Salary and Incentive Compensation, and is Continuously Denied the Promotion Promised and Due to Her.

73.     Although Ms. Riches' level of responsibility now equaled or exceeded that of male Directors (D3), Dell refused to award her a promotion or any increase in compensation comparable to her job responsibilities.  From August 2006 until the date of her resignation, all individuals who were previously responsible for Ms. Riches' duties were male Directors, titled and compensated at the D3 level.

74.     During this same time-period, Ms. Riches continuously requested to be paid and promoted at the Director (D3) level.  Although Dell promised that Ms. Riches would be made

Director and continued to award her outstanding performance reviews and to increase her levels

of responsibility, Dell management never elevated Ms. Riches' pay or title to D3 status in her

four and a half years at the Company.  Dell instead awarded increased pay and promotions to less

qualified and less experienced males throughout this time.

> **4.** **While Ms. Riches is Commended for** *"Making Nice Progress Breaking into Arguably One of the Toughest Old Boy Networks in Dell,"* **She is Subjected to Discriminatory Stereotypes in Her Employment Reviews.**

75.    In Ms. Riches' mid-year feedback in 2007, Dell management commended her for

her abilities to break into *"one of the toughest old boy networks in Dell."*  They also told her that

her slow progression *"is not about you," and* promised her that *"you'll reap the benefits of this*

*over time."*

76.    Applying similar stereotypes throughout the same review, the male executive who

supervised her V.P. Mr Summers commended her for being *"very direct"* and *"influential with*

*others,"* while at the same time repeatedly cautioning her against being too *"strong."*   For

example, he stated:

- *"Be cautious* of your tendency to form … *strong* opinions…"

- "You have a *strong* drive for results and a *strong* bias to the 'right' way to do

  things, based on your experiences. *Try and balance that…"*

- You have a *strong* presence with your colleagues and have a voice at the table.

  *Be careful* not to overuse it…"

77.    Although strength is typically an asset in an employee, that is apparently not the

case for female employees at Dell. This example illustrates how Dell employs impermissibly

subjective evaluation and criteria that permit the introduction of gender stereotypes into

employment decisions.

### 5.   Ms. Riches Complains to Management Regarding Discriminatory Treatment.

78.     During Ms. Riches' employment at Dell, she repeatedly complained about unequal treatment to her immediate managers.  In particular, Ms. Riches often complained about Dell's failure to pay her and promote her at the Director (D3) level occupied by males with similar levels of responsibility.

79.     In the summer of 2007, Ms. Riches was also interviewed as part of an internal investigation or audit referred to as a "focus group" regarding gender discrimination at Dell.  In that interview, Ms. Riches candidly discussed her complaints about discrimination with the interviewer, an outside consultant working for Dell.  She specifically discussed how Dell repeatedly moved her into positions previously occupied by male Director (D3) employees, without any change in job responsibilities, but then refused to pay or promote her at the Director (D3) level.  Time and time again, Dell refused to provide Ms. Riches with any pay increases or promotional opportunities equivalent to the title and compensation occupied by males with similar levels of responsibility.

### 6.   Ms. Riches is Subjected to Retaliation by Dell.

80.     After she complained about the gender discrimination at Dell, the Company retaliated against Ms. Riches.  Shortly after her participation in the internal investigation, her male supervisor told her that her promotion was "never going to happen at Dell."  This led Ms. Riches to resign from the Company.

81.     Accordingly, Dell has discriminatorily denied Ms. Riches the compensation and promotional opportunities due to her since her hiring in September 2003, the effect of which was compounded by each passing year and was significantly magnified by Dell's discriminatory and retaliatory treatment of her which led to her resignation in May 2008.  Dell's discriminatory and

retaliatory acts deprived Ms. Riches of equal pay, promotional opportunities and just compensation during her time at Dell. At the same time, Ms. Riches has suffered emotional harm as a result of her treatment at Dell, impeding her personal life and general well-being.

## VI.   CLASS ACTION ALLEGATIONS

### A.   General Allegations Relevant to Class Claims and Class Definitions

#### (1)   Gender Class

82.   Class Representatives Chapman, Hopkins, Mahaffey and Riches and the class of female Dell managers and other professional level employees they seek to represent have been subjected to a systemic pattern and practice of gender discrimination involving a battery of practices which have had a continuing, unlawful disparate impact on them and their employment opportunities. Such gender discrimination includes (a) compensating female employees, including female employees at the D1 and C3 grade levels, less than their male counterparts; (b) segregating female employees, including female employees at the D1 and C3 grade levels, into lower paying grade levels than their male counterparts; (c) denying female employees, including female employees at the D1 and C3 grade levels, development, placement, promotion, and advancement opportunities resulting in their remaining in lower classification and compensation levels; and (d) disproportionately terminating female employees, including female employees at the D1 and C3 grade levels, when compared with their male counterparts.

83.   Dell, in effect, bars female professionals and managers from better and higher-paying positions which have traditionally been held by men. The systemic means of accomplishing such gender-based stratification include, but are not limited to, Dell's development, placement, promotion, advancement, training, performance evaluation, and termination/retention policies, practices, and procedures.

84.   Dell incorporates the following gender-based discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of gender stereotypes and biases by Dell's predominately male executive, managerial, and supervisory staff in making placement, promotion, training, performance evaluation, compensation, and termination decisions; (b) refusing or failing to provide equal training opportunities to females; and (c) refusing or failing to establish and/or follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact and/or intentional biases or stereotypes.

85.   Defendant's development, compensation, placement, promotion, training, performance evaluation, termination/retention, and transfer policies, practices and procedures have a disparate impact on the Class Representatives and the class they seek to represent. Such procedures are not valid, job-related, or justified by business necessity. Such practices form a part of the Defendant's overall pattern and practice of keeping women in lower classifications which have less desirable terms and conditions of employment, and in terminating women in disproportionate numbers.

86.   Because of Defendant's systemic pattern and practice of gender discrimination, the Class Representatives and the class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, backpay, bonuses, stock, and employment benefits.

87.   Dell has failed to impose adequate discipline on managers and employees who violate the Company's diversity mandates and equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such policy and such laws regarding the policies, practices, and procedures described above.

88.     The Class Representatives and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief.  The Class Representatives and the Class are now suffering, and will continue to suffer, irreparable injury from Dell's ongoing, unlawful policies, practices, and procedures as set forth herein unless those policies, practices, and procedures are enjoined by this Court.

89.     Class Representatives Chapman, Hopkins, Mahaffey, and Riches seek to maintain claims on their own behalf and on behalf of a class of current and former female employees, including female employees at the D1 and C3 grade levels, at Dell.

90.     The class consists of all current and former female employees, including female employees at the D1 and C3 grade levels, who are, or have been, employed by Dell during the applicable liability period.  Upon information and belief, there are thousands of such employees in the proposed gender class.

91.     The Class Representatives seek to represent all of the female employees described above.  The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

(2)     *Age Class*

92.     Class Representative Chapman and the class of Dell managers and other professional level employees over the age of 40 have been subjected to a systemic pattern and practice of age discrimination, including selective, disparate, and disproportionate termination during Dell's ongoing reduction in force, including mass layoffs in April 2008 and other recent layoffs.

93.     Dell, in effect, implements its company-wide layoffs as an opportunity to

disproportionately get rid of older employees at the Company or utilizes its termination practices and procedures as to have a disparate impact on such employees.

94.     Dell's termination/retention and layoff policies, practices and procedures incorporate subjective judgments, procedures, and criteria which permit and encourage the incorporation of age-based stereotypes and biases and fail to establish criteria that reduce or eliminate disparate impact and/or intentional biases or stereotypes.

95.     Dell's layoff and termination/retention policies, practices, and procedures have had a disparate impact on the Class Representative and the members of the class. Such procedures are not valid, reasonable, job-related, or justified by business necessity.

96.     Because of Defendant's systemic pattern and practice of age discrimination, the Class Representative and the class she seeks to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, backpay, bonuses, stock, and employment benefits.

97.     Dell has failed to impose adequate discipline on managers and employees who violate the Company's policies and equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such policy and such laws regarding the policies, practices, and procedures described above.

98.     The Class Representative and the class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief. The Class Representative and the class are now suffering, and will continue to suffer, irreparable injury from Dell's on-going, unlawful policies, practices, and procedures as set forth herein unless those policies, practices, and procedures are enjoined by this Court.

99.     Class Representative Chapman seeks to maintain claims on her own behalf and on behalf of former employees over the age of 40, including employees over 40 at the D1 and C3 grade levels, who were laid off by the Company, as well as current and future employees over the age of 40, including employees over 40 at the D1 and C3 grade levels,  who are subject to ongoing and future layoffs at Dell.

100.    Upon information and belief, there are thousands of such employees in the proposed class.

101.    The Class Representative seeks to represent all of the older employees described above.  The systemic age discrimination described in this Complaint has been, and is, continuing in nature.

**B.     Inapplicability of Waivers**

*(1)     Gender Class*

102.    Along with the mass layoffs in April 2008 and earlier, Dell provided to the members of the gender class Separation Agreement and Release form contracts.  In exchange for a class member signing the Agreement and thereby releasing all claims – including federal and state employment discrimination claims – Dell agreed to provide standardized severance packages, including two weeks' pay, the employee's prorated incentive bonus payout for time already worked in Fiscal Year 2009, and a maximum of two months of outplacement services. Dell provided only 14 days for an employee to return the signed agreement and did not advise or otherwise mention consultation with an attorney.

103.    The terms of the Agreement expressly applied to future defamation by Dell against the employee and implicitly waived prospective rights under various labor and employment statutes such as Title VII and the Fair Labor Standards Act ("FLSA").  Finally, the

Agreement specified that the employee agreed not to "voluntarily participate in, or directly or indirectly aid or encourage any other party in connection with, any lawsuit, claim, demand, or proceeding of any kind," but on the contrary would "fully cooperate" with Dell with regard to lawsuits brought by other parties.

104.    Upon information and belief, this standard Agreement is designed to insulate Dell's underlying discrimination as well as future discrimination by coercing the class members into remaining silent or into following marching orders and parroting the company line. Any class members who signed the Agreement did not do so knowingly and voluntarily. Furthermore, various provisions – including but not limited to the waiver of prospective rights, waiver of the right to file EEOC charges and initiate or participate in an EEOC investigation, and potential witness tampering or subornation of perjury – are contrary to public policy and therefore void.

(2)    *Age Class*

105.    Along with the mass layoffs in April 2008 and earlier, Dell provided to the members of the age class Separation Agreement and Release form contracts. In exchange for members of the age class signing the Agreement and thereby releasing all claims – including federal and state employment discrimination claims – Dell agreed to provide standardized severance packages, including two weeks of severance pay, employees' prorated incentive bonus payout for time already worked in Fiscal Year 2009, and a maximum of two months of outplacement services. Dell provided 45 days for an employee to return the signed agreement as well as 7 days to revoke the Agreement after signing. Dell further advised age class members to consult with an attorney and specified that they did not waive any ADEA claims that might arise in the future.

106.    In addition, Dell provided the age class members with an attachment including the ages and job titles of some (but not all) employees both terminated and retained in the mass layoffs/reduction in force.  While Dell stated that all U.S. employees in its Human Resources Organization were "eligible for the [termination] program," it did not mention employees in other Departments in the Company.  It also did not specify the eligibility factors for selection – merely stating in tautological fashion that the employees "whose positions are being affected as part of the reduction in force are selected for the program."  Nor did Dell provide written information concerning the program's time limits.  For these reasons as well as others, any releases signed by class members are invalid and unenforceable under the strict requirements of 29 U.S.C. § 626(f).

107.    Furthermore, the terms of the Agreement expressly applied to future defamation by Dell against the employee and implicitly waived prospective rights under various labor and employment statutes such as Title VII and the FLSA.  Finally, the Agreement stipulated that the employee agreed not to "voluntarily participate in, or directly or indirectly aid or encourage any other party in connection with, any lawsuit, claim, demand, or proceeding of any kind,"  but on the contrary would "fully cooperate" with Dell with regard to lawsuits brought by other parties.

108.    Upon information and belief, this standard Agreement is designed to insulate Dell's underlying discrimination as well as future discrimination by coercing the class members into remaining silent or into following marching orders and parroting the company line.  Any class members who signed the Agreement did not do so knowingly and voluntarily.  Furthermore, various provisions – including but not limited to the waiver of prospective rights, waiver of the right to file EEOC charges and initiate or participate in an EEOC investigation, and potential witness tampering or subornation of perjury – are contrary to public policy and void.

C.    **Efficiency of Class Prosecution of Common Claims**

109.    Certification of classes of female employees, including female employees at the D1 and C3 grade levels, and employees over the age of 40, including employees over 40 at the D1 and C3 grade levels, is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed classes.  The individual claims of the Class Representatives require resolution of the common questions of whether Dell has engaged in a systemic pattern and/or practice of gender discrimination against female employees, including female employees at the D1 and C3 grade levels, and whether Dell has engaged in a systemic pattern and/or practice of age discrimination against employees over the age of 40, including employees over 40 at the D1 and C3 grade levels.

110.    Class Representatives Chapman, Hopkins, Mahaffey and Riches seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers and working conditions and in the lives, careers and working conditions of the proposed class members, and to prevent continued discrimination in the future.  Plaintiffs Chapman, Hopkins, Mahaffey and Riches have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on class members generally.  In order to gain such relief for themselves, as well as for the class members, Class Representatives Chapman, Hopkins, Mahaffey and Riches will first establish the existence of systemic discrimination as the premise for the relief they seek.  Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Certification of the proposed classes is

the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed classes, and Defendant Dell.

111.    The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case.  Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

**D.    Numerosity and Impracticability of Joinder**

112.    The members of the classes which the Class Representatives seek to represent are too numerous to make joinder practicable.  The proposed classes each consist of thousands of current, former and future employees during the liability period.  Dell's pattern and/or practice of discrimination also makes joinder impracticable by discouraging employees from applying for or pursuing equal pay, promotional, training, or transfer opportunities, thereby making it impractical and inefficient to identify many members of the classes prior to determination of the merits of Dell's class-wide liability.

**E.    Common Questions of Law and Fact**

113.    The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the classes they seek to represent.

114.    The common questions of law include, *inter alia:*

(a) whether Dell has engaged in unlawful, systemic gender discrimination in its compensation, selection, placement, promotion, advancement, transfer, training, discipline, and termination/retention policies, practices, and procedures, and in the general terms and conditions of work and employment;

(b) whether Dell is liable for a continuing systemic violation of Title VII, and/or other statutes;

(c) a determination of the proper standards for proving a pattern or practice of discrimination by Dell against its female employees, including female employees at the D1 and C3 grade levels;

(d) whether Dell has engaged in unlawful, systemic age discrimination in its termination/retention policies, practices, and procedures and in the general terms and conditions of work and employment; and

(e) a determination of the proper standards for proving a pattern and practice of discrimination by Dell against its employees over the age of 40, including employees over 40 at the D1 and C3 grade levels.

115.   The common questions of fact include, *inter alia*:

(a) whether Dell has, through its policies, practices, and procedures, compensated female employees, including female employees at the D1 and C3 grade levels, less than similarly-situated males through the use of salary, incentive compensation and/or other perks;

(b) whether Dell has, through its policies, practices, and procedures, precluded or delayed the selection, placement and promotion of female employees, including female employees at the D1 and C3 grade levels, into higher level jobs, including but not limited to Director-level positions, traditionally held by male employees;

(c) whether Dell has, through its policies, practices, and procedures, disproportionately terminated female employees, including female employees at the D1 and C3 grade levels, during the company-wide layoffs in April 2008 and other recent layoffs; and

(d) whether Dell has, through its policies, practices, and procedures, disproportionately terminated employees over the age of 40, including employees over 40 at the D1 and C3 grade levels, during the company-wide layoffs in April 2008 and other recent layoffs.

These common questions of fact are naturally amenable to class-based proof.

116.    The employment policies, practices, and procedures to which the Class Representatives and the class members are subjected are set at Dell's corporate level at its Round Rock, TX headquarters and apply universally to all class members. These employment policies, practices and procedures are not unique or limited to any department; rather, they apply to all departments and, thus, affect the Class Representatives and class members in the same ways no matter the facility, department, or position in which they work.

117.    Throughout the liability period, a disproportionately large percentage of the executives, senior executives and officers at Dell have been male.

118.    Discrimination in selection, placement, promotion, and advancement occurs as a pattern and practice throughout all departments of Dell. Selection, placement, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, pre-selection, and interaction between male executives and subordinates rather than by merit or equality of opportunity. As a result, male employees have advanced and continue to advance more rapidly to better and higher-paying jobs than do female employees. Dell's policies, practices, and procedures have had an adverse impact on female employees, including female

employees at the D1 and C3 grade levels, seeking selection for, or advancement to, better and higher-paying positions. In general, the higher the level of the job classification, the lower the percentage of female employees holding it.

119. Furthermore, discrimination within Dell's April 2008 mass layoffs and other recent layoffs occurred as a pattern and practice throughout the manager level of all departments of Dell. Selection of employees to be terminated was driven by personal familiarity, subjective decision-making, pre-selection and interaction between executives and subordinates rather than by merit or equality of opportunity. In addition, the layoffs were used to target female employees and older employees, including these employees at the D1 and C3 grade levels, who were disproportionately terminated while equivalent male employees and younger employees were retained.

**F.   Typicality of Claims And Relief Sought**

*(1)   Gender Class*

120. The claims of Plaintiffs Chapman, Hopkins, Mahaffey and Riches are typical of the claims of the gender class. The relief sought by the Class Representatives for discrimination complained of herein is also typical of the relief which is sought on behalf of the class.

121. Like the members of the gender class, the Class Representatives are female D1 and C3 level employees who have worked at Dell during the liability period.

122. Discrimination in selection, placement, promotion, advancement, training, and termination/retention affects the compensation of the Class Representatives and all the employee class members in the same or similar ways.

123. Dell has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the

policies, practices, and procedures referenced in this Complaint, and has failed to discipline adequately its executives, managers, and other employees when they violate Company policy or discrimination laws.    These  failures  have  affected  the  Class  Representatives  and  the  class members in the same or similar ways.

124.    The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the class members in this case.  The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class:

(a)  a  declaratory  judgment  that  Dell  has  engaged  in  systemic  gender  discrimination against  female  managers  and  senior  professionals  by  (1)  paying  female  employees, including  female  employees  at  the  D1  and  C3  grade  levels,  less  than  their  male counterparts,  (2)  segregating  female  employees,  including  female  employees  at  the  D1 and  C3  grade  levels,  into  lower-paying  grade  levels  than  their  male  counterparts,  (3) denying  female  employees,  including  female  employees  at  the  D1  and  C3  grade  levels, promotions  into  better  and  higher-paying  positions,  and  (4)  disproportionately terminating  them  during  layoffs  while  retaining  comparable  male  employees  or  otherwise giving similarly situated males preferential treatment;

(b) a permanent injunction against such continuing discriminatory conduct;

(c) injunctive relief which effects a restructuring of Dell's placement, promotion, transfer, training,  performance  evaluation,  compensation,  discipline,  and  termination/retention policies,  practices,  and  procedures  –  so  that  female  managers  and  professionals  will  be able  to  compete  fairly  in  the  future  for  promotions,  transfers,  and  assignments  to  better

and higher-paying classifications with terms and conditions of employment traditionally enjoyed by male employees, as well as for retention during layoffs;

(d) backpay, front pay, and other equitable remedies necessary to make the female employees, including female employees at the D1 and C3 grade levels, whole from the Defendant's past discrimination;

(f) punitive and nominal damages to prevent and deter Dell from engaging in similar discriminatory practices in the future;

(g) compensatory damages; and

(h) attorneys' fees, costs and expenses.

(2)     Age Class

125.    The claim of Plaintiff Chapman is typical of the claims of the age class. The relief sought by the Class Representative for age discrimination complained of herein is also typical of the relief which is sought on behalf of the class.

126.    Like the members of the age class, Class Representative Chapman is an employee over the age of 40 who worked at Dell during the liability period and was terminated in Dell's ongoing series of layoffs.

127.    Discrimination in termination/retention affects the compensation and benefits afforded to the Class Representative and all the employee class members in the same or similar ways.

128.    Dell has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding the policies, practices, and procedures referenced in this Complaint, and has failed to discipline adequately its executives, managers and other employees when they violate Company policy or discrimination

laws.  These failures have affected the Class Representative and the class members in the same or similar ways.

129.    The relief necessary to remedy the claims of the Class Representative is exactly the same as that necessary to remedy the claims of the class members in this case.  The Class Representative seeks the following relief for her individual claims and for those of the members of the proposed class:

(a) a declaratory judgment that Dell has engaged in systemic age discrimination against managers and senior professionals over age 40 by disproportionately terminating them in the April 2008 layoffs and other recent layoffs;

(b) a permanent injunction against such continuing discriminatory conduct;

(c) injunctive relief which effects a restructuring of Dell's termination policies, practices, and procedures – so that older managers and professionals will be able to compete fairly in the future for retaining their positions during layoffs;

(d) backpay, front pay, and other equitable remedies necessary to make the class members whole from the Defendant's past discrimination;

(f) punitive and nominal damages to prevent and deter Dell from engaging in similar discriminatory practices in the future;

(g) compensatory damages; and

(h) attorneys' fees, costs and expenses.

### G.    Adequacy of Representation

130.    The Class Representatives' interests are co-extensive with those of the members of the proposed classes which they seek to represent in this case.  The Class Representatives seek to remedy Dell's discriminatory employment policies, practices, and procedures so that class

members will no longer be prevented from advancing into higher paying and more desirable positions and subject to disparate and disproportional termination. Plaintiffs Chapman, Hopkins, Mahaffey and Riches are willing and able to represent the proposed classes fairly and vigorously as they pursue their individual claims.

131.    The Class Representatives have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of Class Representatives' counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

**H.    Requirements of Rule 23(b)(2)**

132.    Dell has acted on grounds generally applicable to the Class Representatives and the classes by adopting and following systemic policies, practices, and procedures which are discriminatory. Gender and age discrimination is Dell's standard operating procedure rather than a sporadic occurrence. Dell has refused to act on grounds generally applicable to the classes by, *inter alia*:

(a) failing to pay, compensate, place, promote, and retain female employees, including female employees at the D1 and C3 grade levels, on par with similarly-situated male employees;

(b) refusing to adopt and apply selection, placement, promotion, training, performance evaluation, compensation, discipline, and termination/retention policies, practices, and procedures which do not have a disparate impact on, or otherwise systemically

discriminate against female employees, including female employees at the D1 and C3 grade levels;

(c) refusing to provide equal terms and conditions of employment for female employees, including female employees at the D1 and C3 grade levels;

(d) failing to retain employees over the age of 40, including employees over 40 at the D1 and C3 grade levels, on par with similarly-situated younger employees;

(e) refusing to adopt and apply selection and termination/retention policies, practices, and procedures that do not have a disparate impact on, or otherwise systemically discriminate against employees over the age of 40, including employees over 40 at the D1 and C3 grade levels,; and

(f) refusing to provide equal terms and conditions of employment for employees over the age of 40, including employees age 40 at the D1 and C3 grade levels. Dell's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the classes as a whole.

133. Injunctive and declaratory relief are the predominant modes of relief sought in this case because they are the culmination of the proof of Dell's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Class Representatives' and class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female employees and systemic age discrimination against employees over 40 at Dell. Such relief is the factual and legal predicate for the Class Representatives' and

class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systematic discrimination.

**I.      Requirements of Rule 23(b)(3)**

134.    The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims. These issues include whether Dell has engaged in gender discrimination against female employees, including female employees at the D1 and C3 grade levels, by denying them equal pay, placement, promotion, advancement, and retention opportunities and whether Dell has tolerated a culture of gender discrimination directed against such employees. These issues further include whether Dell has engaged in age discrimination against employees over the age of 40, including older employees at the D1 and C3 grade levels, by denying them equal opportunities to retain their positions during layoffs, and whether Dell has tolerated a culture of age discrimination against such employees.

135.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed classes.

136.    The cost of proving Dell's pattern and practice of discrimination makes it impracticable for the Class Representatives and members of the proposed classes to prosecute their claims individually.

**VII.    COLLECTIVE ACTION ALLEGATIONS (EQUAL PAY ACT)**

137.    Named Plaintiffs Chapman, Hopkins, Mahaffey and Riches incorporate by reference the allegations from the previous paragraphs of this Complaint alleging class-based discrimination against female employees.

### A.   Collective Action Standards

138.   Named Plaintiffs bring collective violations of the Equal Pay Act ("EPA") as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) on behalf of all members of the gender class – e.g. current, former, and future female employees, including female employees at the D1 and C3 grade levels, during the liability period.  The EPA action includes female employees who (a) were not compensated equally to males who had substantially similar job classifications, functions, families, titles and/or duties, (b) were not compensated equally to males who performed substantially similar work, and (c) who were denied equal compensation with similarly situated males by being hired into positions at lesser grades than male employees who performed substantially similar work.

139.   Questions of law and fact common to the EPA Collective Action Plaintiffs as a whole include but are not limited to the following:

(a) Whether Defendant unlawfully failed and continues to fail to compensate female professionals and managers at a level commensurate with similarly situated male employees;

(b) Whether Defendant unlawfully failed and continues to fail to hire female professionals and managers into positions graded at an equal pay and compensation scale to similarly qualified males;

(c) Whether Defendant unlawfully failed and continues to fail to promote and advance female professionals and managers in a fashion commensurate with similarly qualified males;

(d) Whether Defendant's policy and practice of failing to compensate female employees, including female employees at the D1 and C3 grade levels, on a par

with comparable male employees as a result of (a), (b), and (c) violates applicable provisions of the EPA; and

(e) Whether Defendant's failure to compensate female employees, including female employees at the D1 and C3 grade levels, on a par with comparable male employees as a result of (a), (b), and (c) was willful within the meaning of the EPA;

140.   Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs because the claims of the Named Plaintiffs are similar to the claims of the EPA Collective Action Plaintiffs.

141.   Plaintiffs Chapman, Hopkins, Mahaffey and Riches and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, families, titles and/or duties; and (c) are subject to Defendant's common policy and practice of gender discrimination in (i) failing to compensate female professionals and managers on par with men who perform substantially equal work and/or hold equivalent levels and positions; (ii) failing to provide female professionals and managers with job classifications, grades and titles commensurate with male employees who perform substantially equal work and/or have similar duties and responsibilities; (iii) hiring females into lower-level positions than males who perform substantially equal work and/or have similar or lesser experience and qualifications; and (iv) failing to provide female professionals and managers equal pay by denying opportunities for promotion and advancement to them comparable to those afforded to males who perform substantially equal work.

## VIII.   COLLECTIVE ACTION ALLEGATIONS (AGE DISCRIMINATION)

### A.   General Allegations and Invalidity of Waivers

142.   Named Plaintiff Chapman incorporates by reference the previous allegations of this Complaint alleging discrimination against employees over the age of 40, including employees over 40 at the D1 and C3 grade levels.

### B.   Collective Action Standards

143.   Named Plaintiff brings collective violations of the Age Discrimination in employment Act ("ADEA") as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), incorporated by reference, on behalf of all members of the age class.  The ADEA action includes current, former and future employees over the age of 40, including employees over 40 at the D1 and C3 grade levels, during the liability period who were either (a) terminated in Dell's recent series of layoffs or (b) are subject to termination in Dell's ongoing layoffs.

144.   Questions of law and fact common to the ADEA Collective Action Plaintiffs as a whole include but are not limited to the following:

(a)   Whether Defendant unlawfully discriminated and continues to unlawfully discriminate against older professionals and managers over the age of 40 during layoffs;

(b)   Whether Defendant's policy and practice of selectively, disparately, and/or disproportionately terminating older professionals and managers over the age of 40 violates applicable provisions of the ADEA; and

c)   Whether Defendant's selective, disparate, and/or disproportional termination of employees over the age of 40 was willful within the meaning of the ADEA.

145.    Counts for violation of the ADEA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the ADEA Collective Action Plaintiffs because the claims of the Named Plaintiff are similar to the claims of the ADEA Collective Action Plaintiffs.

146.    Plaintiff Chapman and the ADEA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar grades and titles; and (c) are subject to Defendant's common policy and practice of age discrimination in targeting or disproportionately terminating older employees over the age of 40 during company-wide layoffs.

## CLASS AND COLLECTIVE ACTION COUNTS

## COUNT I

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

### EMPLOYMENT DISCRIMINATION BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, *et seq.*,

147.    Class Representatives Chapman, Hopkins, Mahaffey and Riches re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein, including the allegations that any waivers signed by members of the proposed class are ineffective.

148.    This Count is brought on behalf of the Class Representatives and all members of the gender class.

149.    Defendant has discriminated against the Class Representatives and all members of the Class in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment

on the basis of their gender.  The members of the Class have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

150.    Defendant has discriminated against the Class Representatives and all members of the Class by treating them differently from and less preferably than similarly-situated male employees and by subjecting them to discriminatory compensation, discriminatory placement, discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory and selective termination and other forms of discrimination, in violation of Title VII.

151.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed Class, entitling the Class Representatives and the members of the Class to punitive damages.

152.    By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout the employment of the Class Representatives and the members of the Class, the Class Representative and the members of the Class are entitled to application of the continuing violations doctrine to all violations alleged herein.

153.    As a result of Defendant's conduct alleged in this complaint, the Class Representatives and the members of the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

154.    Defendant's policies, practices and/or procedures have produced a disparate impact on the Class Representatives and the class members with respect to their terms and conditions of employment.

155.    By reason of Defendant's discrimination, the Class Representatives and members of the class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

156.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT II**

**(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)**

**DENIAL OF EQUAL PAY FOR EQUAL WORK BASED ON SEX
IN VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938,
AS AMENDED BY THE EQUAL PAY ACT OF 1963 – 29 U.S.C. §§ 206, *et seq.***

157.    Named Plaintiffs Chapman, Hopkins, Mahaffey and Riches re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein, including the allegations that any waivers signed by collective plaintiffs are ineffective.

158.    Defendant, an employer of the Named Plaintiffs and the EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act, has discriminated against the Named Plaintiffs and EPA Collective Action Plaintiffs in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the Equal Pay Act of 1963 ("EPA"), by subjecting them to unequal pay on the basis of sex.

159.    Defendant has discriminated against the Named Plaintiffs and EPA Collective Action Plaintiffs by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.    Defendant so discriminated by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, lower paying job classifications, and other forms of discrimination in violation of the Equal Pay Act.

160.   Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the Equal Pay Act.  Moreover, Defendant knew of or showed reckless disregard for the fact that its conduct was in violation of the Equal Pay Act.

161.   Dell's discriminatory acts were accomplished in large part through its Vice President of Global HR Operations, Dominick DiCosimo, a male Officer and agent of Dell who, upon information and belief, was not only directly aware of the substantial inequity in compensation and benefits between similarly situated male and female professionals and managers but is knowledgeable about the laws regarding equal pay.  In his leadership role, Mr. DiCosimo reported to Dell's senior management, including CEO Michael Dell and the Company's Senior VP in charge of Human Resources, Andrew Esparza.

162.   As a result of Defendant's conduct alleged in this Complaint and/or Defendant's willful, knowing and intentional discrimination, the Named Plaintiffs and EPA Collective Action Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

163.   The Named Plaintiffs and EPA Collective Action Plaintiffs are therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

164.   Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq*.

## COUNT III

**(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)**
**AGE DISCRIMINATION IN TERMINATIONS**
**IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**("ADEA"),**
**29 U.S.C. §§ 621,** *et seq.*

165.    Named Plaintiff Chapman re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein, including the allegations that any waivers signed by collective plaintiffs are ineffective.

166.    This Count is brought on behalf of Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs. Plaintiff Chapman and all ADEA Collective Action Plaintiffs were 40 years of age or over at the time of the events giving rise to their claims.

167.    Defendant has discriminated against Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), by subjecting them to different treatment on the basis of their age. The ADEA Collective Action Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

168.    Defendant has discriminated against Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs by treating them differently from and less preferably than similarly-situated younger employees and by subjecting them to discriminatory and selective termination and other forms of discrimination, in violation of the ADEA.

169.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs, entitling Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs to punitive damages.

170.     As a result of Defendant's conduct alleged in this complaint, Named Plaintiff and the ADEA Collective Action Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

171.     By reason of Defendant's conduct as alleged herein, Named Plaintiff Chapman and the ADEA Collective Action Plaintiffs are entitled to all legal and equitable remedies available for violations of the ADEA, including liquidated damages.

172.     Attorneys' fees should be awarded under 29 U.S.C. § 626(b)

## INDIVIDUAL COUNTS—PLAINTIFF CHAPMAN

## COUNT IV

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT,
### 42 U.S.C. § 2000e-3(a)

173.     Plaintiff Chapman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

174.     Plaintiff Chapman regularly complained to the Company regarding gender discrimination at Dell as it related to Dell's failure to promote her on an equal basis with similarly situated men.     In retaliation, Defendant maliciously manipulated her performance review for 2007, thereby denying her a Long Term Incentive Award of approximately $179,000 and ensuring that she would be a target for the upcoming layoff.     Furthermore, Defendant terminated Ms. Chapman's employment during the April 2008 mass layoffs while retaining less qualified men.     Upon information and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against by the Company.

175. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Chapman, entitling her to punitive damages.

176. Because of Defendant's conduct alleged in this Complaint, Plaintiff Chapman has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

177. By reason of Defendant's conduct as alleged herein, Plaintiff Chapman is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

178. Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT V

### RETALIATION
### IN VIOLATION OF THE EQUAL PAY ACT,
### 29 U.S.C. § 215(a)(3)

179. Plaintiff Chapman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

180. Plaintiff Chapman regularly complained to the Company regarding gender discrimination at Dell as it related to Dell's failure to promote her on an equal basis with similarly situated men. In retaliation, Defendant maliciously manipulated her performance review for 2007, thereby denying her a Long Term Incentive Award and ensuring that she would be a target for the upcoming layoff. Furthermore, Defendant terminated Ms. Chapman's employment during the April 2008 mass layoffs while retaining less qualified men. Upon

information and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against.

181.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Chapman, entitling her to punitive damages.

182.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff Chapman has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish. Because of Defendant's conduct as alleged herein, Plaintiff Chapman is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

183.    Attorneys' fees should be awarded under 29 U.S.C. § 216, *et seq.*

## COUNT VI

### FRAUDULENT INDUCEMENT/BREACH OF CONTRACT/ PROMISSORY ESTOPPEL

184.    Plaintiff Chapman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

185.    Defendant induced Plaintiff Chapman to accept a position at Dell and to relocate from Houston to Austin by falsely or fraudulently promising or misrepresenting that her position would be secure, that she would be protected from any layoffs, and that she would be promoted to the Director level within 12 to 18 months.

186.    In reliance, Plaintiff Chapman sold her home in Houston and purchased a home in Austin and incurred substantial moving expenses. Furthermore, she and her husband forfeited

other employment opportunities.  As a result, Plaintiff Chapman and her husband have sustained significant financial losses.

187.    Defendant breached said promises and representations by failing to promote Ms. Chapman to Director and by terminating her in the April 2008 layoffs (while retaining similarly situated males and younger employees).

188.    Plaintiff Chapman is therefore entitled to all legal and equitable remedies, as well as punitive damages.

## INDIVIDUAL COUNTS—PLAINTIFF HOPKINS

### COUNT VII

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT,
### 42 U.S.C. §   2000e-3(a)

189.    Plaintiff Hopkins re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

190.    Plaintiff Hopkins regularly complained to the Company regarding gender discrimination at Dell and the failure to pay and promote women, including herself, on an equal basis with similarly situated men.   In retaliation, Defendant maliciously manipulated her performance review for 2007, thereby reducing her bonus and denying her a Long Term Incentive Award and ensuring that she would be a target for the upcoming layoff.  Furthermore, Defendant terminated her employment during the April 2008 mass layoffs while retaining less qualified men.  Upon information and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against by the Company.

191.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Hopkins, entitling her to punitive damages.

192.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff Hopkins has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

193.    By reason of Defendant's conduct as alleged herein, Plaintiff Hopkins is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

194.    Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT VIII

### RETALIATION
### IN VIOLATION OF THE EQUAL PAY ACT,
### 29 U.S.C. § 215(a)(3)

195.    Plaintiff Hopkins re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

196.    Plaintiff Hopkins regularly complained to the Company regarding gender discrimination at Dell and the failure to pay and promote women, including herself, on an equal basis with similarly situated men.    In retaliation, Defendant maliciously manipulated her performance review for 2007, thereby reducing her bonus and denying her a Long Term Incentive Award and ensuring that she would be a target for the upcoming layoff. Furthermore, Defendant terminated her employment during the April 2008 mass layoffs while retaining less

qualified men.  Upon information and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against.

197.   Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Hopkins, entitling her to punitive damages.

198.   Because of Defendant's conduct alleged in this Complaint, Plaintiff Hopkins has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

199.   By reason of Defendant's conduct as alleged herein, Plaintiff Hopkins is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

200.   Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq.*

### INDIVIDUAL COUNTS—PLAINTIFF MAHAFFEY

### COUNT IX

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT,
### 42 U.S.C. § 2000e-3(a)

201.   Plaintiff Mahaffey re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

202.   Plaintiff Mahaffey regularly complained to the Company regarding gender discrimination at Dell and the failure to pay and promote women, including herself, on an equal basis with similarly situated men.  In retaliation, Defendant took adverse employment actions against Ms. Mahaffey, including failing to provide her equal pay or promote her.  Upon

information and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against by the Company.

203.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Riches, entitling her to punitive damages.

204.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff Mahaffey has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

205.    By reason of Defendant's conduct as alleged herein, Plaintiff Mahaffey is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

206.    Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

### COUNT X

### RETALIATION
### IN VIOLATION OF THE EQUAL PAY ACT,
### 29 U.S.C. § 215(a)(3)

196.    Plaintiff Mahaffey re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

197.    Plaintiff Mahaffey regularly complained to the Company regarding gender discrimination at Dell and the failure to pay women, including herself, on an equal basis with similarly situated men.  In retaliation, Defendant took adverse employment actions against Ms. Mahaffey, including failing to provide her equal pay or promote her.  Upon information and

belief, other women at Dell who opposed or complained about unlawful gender discrimination were retaliated against by the Company.

198.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Mahaffey, entitling her to punitive damages.

199.    Because of Defendant's conduct alleged in this Complaint, Plaintiff Mahaffey has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

200.    By reason of Defendant's conduct as alleged herein, Plaintiff Mahaffey is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

201.    Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq.*

### INDIVIDUAL COUNTS—PLAINTIFF RICHES

### COUNT XI

### VIOLATIONS OF TITLE VII,
### 42 U.S.C. 2000e-3(a) – RETALIATION

202.    Plaintiff Riches re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

203.  Plaintiff Riches regularly complained to the Company regarding gender discrimination at Dell and the failure to pay and promote women, including herself, on an equal basis with similarly situated men.  In retaliation, Defendant took adverse employment actions against Ms. Riches, including failing to provide her equal pay or promote her.  Upon information

and belief, other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against by the Company.

204. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Riches, entitling her to punitive damages.

211. As a result of Defendant's conduct alleged in this Complaint, Plaintiff Riches has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

212. By reason of Defendant's conduct as alleged herein, Plaintiff Riches is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

213. Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT XII

### VIOLATIONS OF THE EQUAL PAY ACT.
### 29 U.S.C. § 215(a)(3)-RETALIATION

214. Plaintiff Riches re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

215. Plaintiff Riches regularly complained to the Company regarding gender discrimination at Dell and the failure to pay women, including herself, on an equal basis with similarly situated men. In retaliation, Defendant took adverse employment actions against Ms. Riches, including failing to provide her equal pay or promote her. Upon information and belief,

other women at Dell who opposed or complained about unlawful gender discrimination were similarly retaliated against by the Company.

216.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Riches, entitling her to punitive damages.

217.    Because of Defendant's conduct alleged in this Complaint, Plaintiff Riches has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

218.    By reason of Defendant's conduct as alleged herein, Plaintiff Riches is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

219.    Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq.*

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs Chapman, Hopkins, Mahaffey and Riches, on their own behalf and on behalf of the class members and collective action plaintiffs, pray that this Court:

A.    Certify the case as a class action maintainable under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Plaintiff classes (the gender class under Title VII and the age class under Texas law), and designate Plaintiffs Chapman, Hopkins, Mahaffey and Riches as the representatives of the gender class and Ms. Chapman as representative of the age class and their counsel of record as class counsel;

B.    Designate this action as a collective action on behalf of the proposed EPA Collective Plaintiffs (asserting EPA claims) and

(i) promptly issuing notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the EPA Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely EPA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b); and

(ii) tolling the statute of limitations on the claims of all members of the FLSA Opt-In Class from the date the original complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

C.      Designate Plaintiffs Chapman, Hopkins, Mahaffey and Riches as representatives of the EPA Collective Action;

D.      Designate this action as a collective action on behalf of the proposed ADEA Collective Plaintiffs (asserting ADEA claims) and

(i) promptly issuing notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the ADEA Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely ADEA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b); and

(ii) tolling the statute of limitations on the claims of all members of the ADEA Opt-In Class from the date the original complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

E.      Designate Plaintiff Chapman as representative of the ADEA Collective Action;

F.    Declare and adjudge that Defendant Dell's employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Plaintiffs Chapman, Hopkins, Mahaffey and Riches,  class members, and collective action plaintiffs under Title VII, the EPA, and the ADEA,

G.    Issue a permanent injunction against Dell and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs Chapman, Hopkins, Mahaffey and Riches, class members, and collective action plaintiffs and those similarly situated as secured by Title VII, the EPA, and the ADEA and order such injunctive relief as will prevent Dell from continuing its discriminatory practices and protect others similarly situated;

H.    Issue a permanent injunction against Dell and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, usages, gender discrimination, age discrimination, or retaliation by Dell as set forth herein;

I.    Order Dell to initiate and implement programs that will: (i)  provide equal employment opportunities for the class members and collective action plaintiffs; (ii) remedy the effects of its past and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

J.    Order Dell to initiate and implement systems of assigning, training, transferring, compensating, promoting, and terminating and retaining female employees, including female employees at the D1 and C3 grade levels in a non-discriminatory manner;

K.    Order Dell to establish a task force on equality and fairness to determine the effectiveness of the programs described in G through J above, which would provide for: (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in I through J above;

L.    Order Dell to place or restore Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs into those jobs they would now be occupying but for its discriminatory policies, practices and/or procedures;

M.    Order Dell to adjust the wage rates and benefits for Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the members of the gender class, and the EPA Collective Action Plaintiffs to the level that they would be enjoying but for its discriminatory policies, practices and/or procedures;

N.    Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that Dell has remedied the practices complained of herein and are determined to be in full compliance with the law;

O.    Award nominal, compensatory, liquidated, and punitive damages to Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs in excess of $500,000,000 (five hundred million dollars);

P.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs;

Q.      Award back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs to be determined at trial;

R.      Order Defendant to make whole Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs by providing them with appropriate lost earnings and benefits, and other affirmative relief;

S.      Award any other appropriate equitable relief to Plaintiffs Chapman, Hopkins, Mahaffey and Riches, the class members, and the collective action plaintiffs; and

T.      Award any additional and further relief as this Court may deem just and proper.

///

///

///

///

///

///

///

///

///

///

**JURY DEMAND**

Plaintiffs Chapman, Hopkins, Mahaffey and Riches demand a trial by jury on all issues triable of right by jury.

Dated: October 29, 2008

Respectfully submitted,

SANFORD WITTELS, & HEISLER, LLP

By: _____

Thomas Marc Litton (Of Counsel)
(CA Bar No. 119985)
120 Montgomery Street, Suite 1600
San Francisco, CA 94104
Telephone:  (415) 421-4770
Facsimile:  (415) 421-4784

Steven L. Wittels (NY Bar No. SLW-8110)
Jeremy Heisler (NY Bar No. JH-0145)
Janette Wipper (D.C. Bar No. 467313)
SANFORD WITTELS, & HEISLER LLP
950 Third Ave., 10th Floor
New York, New York 10022
Telephone: (646) 723-2947
Facsimile:  (646) 723-2948
swittels@nydclaw.com
(Pending Pro Hac Vice Admission)
*Attorneys for the Plaintiffs and the Class*

David W. Sanford (D.C. Bar No. 457933)
Stefanie F. Roemer (D.C. Bar No. 464450)
Katherine Kimpel (WI  Bar No. 1064593)
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Ave., NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7777
Facsimile: (202) 742-7776
dsanford@nydclaw.com
(Pending Pro Hac Vice Admission)

*Attorneys for the Plaintiffs and the Class*